**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:16-CR-96(5) |
| | § | |
| BRANDIE PILLOW THOMAS | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Brandie Pillow Thomas's ("Thomas") *Pro Se* Motion for Early Termination of Supervised Release (#416) wherein Thomas seeks early termination of her five-year term of supervised release. Thomas's United States Probation and Pretrial Services ("Probation") Officer in the Eastern District of Texas reviewed the file and is opposed to her request for early termination of her supervised release. The Government is also opposed. Thomas's Probation Officer in the Southern District of Texas has no objection to her request for early termination. Having considered the motion, the positions of Probation, the Government's objection, the record, and the applicable law, the court is of the opinion that Thomas's motion should be denied.

## I.    Background

On November 2, 2016, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a four-count Indictment against Thomas, along with eight codefendants, charging her in Count One with Conspiracy to Possess with Intent to Distribute a Controlled Substance (50 grams or more of methamphetamine "actual"), in violation of 21 U.S.C. § 846, and in Count Three with Possession with Intent to Distribute a Controlled Substance (methamphetamine "actual"), in violation of 21 U.S.C. § 841(a)(1) (#2). She was not named in the other counts of the Indictment. Thomas pleaded guilty to the offense charged in Count One

of the Indictment on May 20, 2017, pursuant to a non-binding plea agreement.  On August 17, 2017, the court sentenced Thomas to a term of 120 months' imprisonment as to Count One, to be followed by a five-year term of supervised release (#275).  Thomas explains that she served 68 months of her prison sentence and earned 12 months off her sentence through FSA credits.  She was released under the CARES Act to home confinement on July 26, 2022, and served 22 months on home confinement.  On May 7, 2024, Thomas began serving her term of supervised release in the Southern District of Texas, which is projected to expire on May 6, 2029.

In her motion, Thomas, age 44, asks the court to terminate her supervision at this time, having served almost two years of her five-year term of supervised release.  She maintains:

> While incarcerated, I took full advantage of all the resources available to me to assist me in my recovery and my rehabilitation.  I first and foremost gave my life to God, then I began the work I knew I needed to do to fix my life.  I worked at UNICOR for the last 4 years of my time working at the call center as a team leader.  The same company I worked for while there hired me upon my release, and I have been employed by them fully since August 26, 2022.  I went to counseling while at FPC Bryan and was able to finally recognize and work through my trauma and addiction.  I can honestly and sincerely say that going to federal prison was the best thing to happen to me.  I had been through so much from my childhood to my abusive marriage to the death of my child and had never grieved or processed any of it.  My time in prison allowed me the time to sit and feel things, and the counseling and classes I took there taught me now to deal with all of it with a sober mind.  I also attended college through Bl[i]nn College while in FPC Bryan working on my Associates in Business Management, and was able to finish the first year of that before my release.
>
> Upon my release to home confinement in July 2022 I came home to live with my sister and was financially responsible for half of the household bills and was also supporting financially my aunt, another sister, and her kids as well.  I reported for a weekly drug test and biweekly case manager meetings.  As well as turning in bi-weekly homework from case manager for different things like trauma, drug counseling and making the right decisions.  I knew in prison when I made the choice to get my life right that I would never go back to my old life of addiction, and I held that when I came home as well.  I lost my grandmother 4 months after coming home, then my mother and my uncle 7 months later and then my sister the next year.  In the past those would have been the reasons and excuses I had for

doing drugs but because of all the help I received in prison and through my faith in God, there was never a thought of relapse in my mind. I removed people from my life who were in active addiction and anyone who lived in a negative light.

I was released from home confinement to supervised release on May 7, 2024, and moved into my very own apartment 2 days later and have been there ever since. This is one of the biggest accomplishments for me because at 42 yrs old this was the first time I had ever had my own place or paid bills. I have complied with probation and completed all drug testing and counseling they required of me and was moved to Low Threat Case Load in May 2025. I have had no incidents with probation or with the law. My probation officer is in the Southern District of Texas, Andrew Flores. I work 5 days a week as Sales Team Leader for my company and have received multiple raises and promotions since my release from prison. I love my job and finally found something I am good at for a career. I get to train and help other people make a living for themselves. I am active in my church, and I have honestly completely changed my life. I fully believe that federal prison saved my life and gave me the skills and tools I needed to be able to succeed. I most certainly did not want to be there, but I praise God daily that I was. Now I would just like to be done with that chapter of my life and keep moving forward.

She adds: "For the reasons listed above, I believe I have shown I have been rehabilitated and that supervision no longer serves a purpose for me. I ask that you grant termination of my supervised release."

II.    Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering certain of the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct

---

[1] These factors include: the nature and circumstances of the offense and the defendant's history and characteristics; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

3

of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir. 2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir. 2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018). In addition, the United States Sentencing Guidelines list supplemental factors that the court may wish to consider when determining whether to terminate the remaining term of supervised release.[2]

"Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021). Instead, the defendant bears the burden of demonstrating that early termination is warranted. *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018). Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022). "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)). In fact, in *United States v. Bowe*, the United States Court of Appeals for the Fourth

---

[2] Specifically, the Guidelines list: (i) any history of court-reported violations over the term of supervision; (ii) the ability of the defendant to lawfully self-manage (*e.g.*, the ability to problem-solve and avoid situations that may result in a violation of a condition of supervised release or new criminal charges); (iii) the defendant's substantial compliance with all conditions of supervision; (iv) the defendant's engagement in appropriate prosocial activities and the existence or lack of prosocial support to remain lawful beyond the period of supervision; (v) a demonstrated reduction in risk level or maintenance of the lowest category of risk over the period of supervision; and (vi) whether termination will jeopardize public safety, as evidenced by the nature of the defendant's offense, the defendant's criminal history, the defendant's record while incarcerated, the defendant's efforts to reintegrate into the community and avoid recidivism, any statements or information provided by the victims of the offense, and other factors the court finds relevant. U.S.S.G. § 5D1.4, Application Note B.

Circuit stated that "Congress has manifested an intent to require full service of supervised release for rehabilitative purposes." 309 F.3d 234, 240 (4th Cir. 2002) (citing *Johnson*, 529 U.S. at 53).

Although Thomas's Probation Officer in the Southern District of Texas does not oppose early termination, this fact, standing alone, is insufficient to justify granting her request for early termination. *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release. A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and Probation did not oppose early termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228-B(01), 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022); *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit

early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts

have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'"  *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1).  *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016).  This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised release.  *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2.  In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination.  *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision).  Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it."  *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *United*

*States v. Baptiste*, No. 98-207, 2025 WL 871520, at *1 (E.D. La. Mar. 20, 2025) (noting that early termination is generally warranted "only in cases where the defendant shows changed circumstances, such as exceptionally good behavior" (quoting *United States v. Jones*, No. V-11-21, 2013 WL 2417927, at *1 (S.D. Tex. June 4, 2013))); *Smith*, 2014 WL 68796, at *1.

According to Thomas's Presentence Report ("PSR"), prepared on June 19, 2017, and revised on July 24, 2017, her offense of conviction entails her participation in a drug trafficking conspiracy involving the distribution of at least 945 grams of methamphetamine "actual." On March 18, 2016, a sheriff's deputy in Hardin County, Texas, was advised that a black Chevrolet Camaro would be transporting a large quantity of methamphetamine while traveling on U.S. Highway 96 toward Jasper County, Texas. The deputy located the vehicle and conducted a traffic stop. Towana Gail Filla ("Filla") was driving the vehicle, while Thomas and Codefendants Michael Wayne Butler ("Butler") and Michael Jason Mouton ("Mouton") were passengers. Butler was the front seat passenger, and Thomas and Mouton were the back seat passengers. Filla gave consent to search the vehicle. The search revealed two bags containing methamphetamine in a box in plain view on the floorboard of the front passenger seat. Laboratory analysis confirmed the seized methamphetamine was 980.3 grams of a mixture or substance containing 945.9 grams of methamphetamine (actual), based on a purity of 97%. Thomas was interviewed and reported that she, Mouton, Butler, Filla, Bo Snelson, and Snelson's unidentified girlfriend had traveled to Houston to obtain the methamphetamine. Thomas, Filla, and Mouton all admitted to knowledge of the methamphetamine and advised officers that they were transporting the methamphetamine and Butler to Louisiana. On that same date, a cooperating source ("CS") reported that Codefendant John Earl Jackson ("Jackson") had called and advised the CS that he had sent Butler

and his wife from Louisiana to Houston to pick up methamphetamine for him and his wife, Lola Michelle Jackson. Butler's wife had returned to Louisiana and was not present during the traffic stop. The PSR indicates that Thomas was living with Codefendant Mouton at the time of her offense of conviction.

In the Factual Basis, Thomas stipulated that she was a mid-level participant in the conspiracy, who agreed with others named and unnamed in the Indictment to distribute quantities of 50 grams of more of methamphetamine "actual" during the course of the conspiracy. Thomas admitted that she was personally responsible for the possession with intent to distribute and/or the distribution of at least 945 grams of methamphetamine "actual" as part of the conspiracy. Thomas's criminal history includes prior convictions for theft of property, possession of a dangerous drug (Xanax and Vicodin), and engaging in organized crime. Probation reports that Thomas incurred several prison disciplinary violations while incarcerated. These include Refusing Work/Program Assignment on November 24, 2017, Failing to Follow Safety Regulations on March 10, 2018, Refusing to Obey an Order on March 14, 2018, and Being in an Unauthorized Area on May 23, 2018. For those moderate severity BOP violations, Thomas received commissary restrictions, loss of a food service job, and telephone restrictions.

Thomas reported a long history of poly-substance abuse beginning at age 13, when she first consumed alcohol. She began using methamphetamine at age 20 and was a regular user at the time of her arrest in 2016. Thomas also has a history of mental health problems, including several suicide attempts. She has been diagnosed with bipolar disorder, depression, post-traumatic stress disorder, and anxiety. Her PSR indicates that she described herself as a "cutter," an individual who causes harm to herself by cutting. In the Judgment, the court ordered that she participate in

9

a program of testing and treatment for drug abuse and to follow the rules and regulations of that program until discharged. The court further ordered that she participate in any combination of psychiatric, psychological, or mental health treatment programs, and to follow the rules and regulations of that program, until discharged.

In this situation, the court finds that Thomas's post-release conduct does not warrant early termination of her supervised release. Although she appears to have complied with her conditions of release to date by maintaining gainful employment and incurring no new arrests, pending charges, or violation reports, Thomas has served less than two years of her five-year term of supervised release. She identifies no new or exceptional circumstances or needs that would merit early release from supervision. Thomas fails to explain how the conditions of her supervised release limit her employment opportunities, interfere with her family responsibilities, impede any medical or mental health treatment, or otherwise impact her daily life in a significant manner. According to Probation, she is currently being supervised as a Post-Conviction Risk Assessment Level of Low Risk/Category 1 for recidivism and violence, which requires only occasional contact. Thomas also does not clarify how being on supervised release keeps her from furthering her career, achieving additional goals, assisting her family, or engaging in recreational, religious, or volunteer activities. Under the circumstances, the court finds the current conditions of Thomas's supervised release are not onerous and remain appropriate in view of her offense of conviction involving her mid-level role in a conspiracy to distribute large quantities of methamphetamine over a seven-month period in 2016.

At this time, Thomas has served almost two years of her five-year term of supervised release. Compared to the more than twenty years prior to her arrest in 2016 during which she

regularly abused drugs, engaged in various criminal activities, rarely worked at a legitimate job, and underwent trauma and mental health crises, the court's requiring the demonstration of a longer period of compliance with supervised release is appropriate.  While her achievements to date should be commended, continuing Thomas on supervision will provide her the best opportunity for long-term success in reentry in view of her prior commission of a serious crime involving the possession and distribution of methamphetamine and her long history of substance abuse and mental health problems.  Requiring Thomas to complete her entire five-year term of supervised release safeguards against the reoccurrence of criminal activity, while imposing only a minimal burden on Thomas.  Generally, early termination of supervised release is not granted unless there are significant medical concerns that are not being addressed, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release.  Thomas does not identify any such circumstances in her motion and is instead seeking early termination of her supervision simply for complying with the conditions of release imposed by the court for less than two years.  Thus, although Thomas appears to be on the right path, the court believes that the completion of her full term of supervised release appropriately reflects the seriousness of her offense of conviction, deters future criminal conduct, and provides needed structure for her continued rehabilitation.  *See Lynn*, 2022 WL 2446328, at *4.

As Probation points out:

> Though Ms. Thomas should be commended for her compliance on supervision thus far, mere compliance with her conditions does not innately warrant early termination, as such behavior is required by law.  In addition, the early termination policy for the U.S. Probation Office in the Eastern District of Texas is more restrictive than the national standards.  Unless there are extraordinary reasons, our office does not typically recommend early termination of supervision until an individual has completed at least half of their term.  Ms. Thomas has completed just over 22 months of her 60-month supervision term.  As previously mentioned,

11

Ms. Thomas is being supervised on the "low threat caseload," which should require minimal intervention by the probation office, while still providing access to beneficial services if deemed necessary.  As such, given the circumstances in this case, the U.S. Probation Office in the Eastern District of Texas agrees with the U.S. Attorney's Office and respectfully recommends the Court deny the motion and allow Ms. Thomas to continue supervision as ordered.

The court concurs with Probation and the Government's assessment of the situation and finds that the early termination of Thomas's five-year term of supervised release would not be in the interest of justice.

III.     Conclusion

In accordance with the foregoing, Thomas's *Pro Se* Motion for Early Termination of Supervised Release (#416) is DENIED.

SIGNED at Beaumont, Texas, this 7th day of April, 2026.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE